were made using at least 8 different offshore nominee entities, through accounts controlled by Ben Kirk and Boyle.

158. Proceeds of the sales were then wired to the Gibraltar accounts of the Kirks, Boyle, Hinton and others, to accounts held at a bank in Barbados, and to the Carrillo Huettel Trust Account.

159. Carrillo and Huettel allowed the Carrillo Huettel Trust Account to be used by John Kirk and Hinton as their de facto bank account. Fraudulent "pump and dump" proceeds were funneled from offshore accounts to the Kirks, Hinton, and other conspirators through the Carrillo Huettel Trust Account.

160. With respect to Tradeshow sales, from August 2009 through February 2010:

   a. Nominee entities controlled by Ben Kirk and Boyle realized more than $4.4 million in proceeds from stock sales of over 5 million shares through accounts at Scottsdale and Gibraltar;

   b. Boyle received more than $300,000 in proceeds from stock sales that he conducted through a personal offshore account in Turks and Caicos;

   c. John Kirk realized proceeds of $306,000 from stock sales conducted through accounts in his own name; and

   d. Hinton realized proceeds of more than $21,000, and also received at least $31,000 in proceeds from sales from Ben Kirk-controlled accounts.

161. From December 2009 through February 2010, Ben Kirk wired over $440,000 in Tradeshow sale proceeds from his nominee accounts at Gibraltar to the Carrillo Huettel Trust Account, for the benefit of John Kirk and others.

162. In February 2010, Ben Kirk and Boyle wired over $3.4 million in Tradeshow proceeds from nominee accounts they held at Scottsdale to an account at a bank in Barbados.

163. With respect to Pacific Blue sales, from March through August 2010:

   a. Nominee entities controlled by the Kirks and Boyle realized more than $5.6 million from stock sales;

35

  b. John Kirk realized proceeds of more than $210,000 from his sale of over 1 million shares of Pacific Blue in privately negotiated transactions to friends and acquaintances leading up to the pump;

  c. John Kirk realized proceeds of more than $100,000 from shares held in his mother's name but that he controlled; and

  d. Hinton also realized proceeds of over $12,000 from shares sold during the pump, and received an additional $150,000 in proceeds of Pacific Blue stock sales.

164. In April 2010, Ben Kirk and Boyle wired over $1.7 million in Pacific Blue proceeds from nominee accounts they held at Scottsdale to an account at a bank in Barbados.

165. In June 2010, Ben Kirk and Boyle wired over $450,000 in Pacific Blue proceeds from nominee accounts they held in Turks and Caicos to an account in Barbados.

166. In June 2010, Ben Kirk wired over $1.5 million in Pacific Blue proceeds from nominee accounts he held at Gibraltar to an account in Barbados.

### G. Dr. Carrillo's Pacific Blue Shares Were Sold for Over $1 Million.

167. Carrillo, Huettel and Carrillo Huettel LLP also profited from the Pacific Blue scheme. An account controlled by Carrillo sold most of the Dr. Carrillo block of Pacific Blue shares at the height of the pump for proceeds of over $1.1 million, which was then wired to a foreign account held in Dr. Carrillo's name. Carrillo, Huettel and Carrillo Huettel LLP all received proceeds from the sale of Dr. Carrillo's block of shares.

168. Over $472,000 of the proceeds from the sale of Dr. Carrillo's shares was wired to the same offshore account in Barbados where the Kirks and Boyle sent their proceeds.

169. $520,000 of the Dr. Carrillo proceeds were wired to accounts in California, which was distributed, in part, as follows:

  a. $343,000 was then transferred to the Carrillo Huettel Trust Account, purportedly as a "loan" from Dr. Carrillo;

    b. At least $125,000 of proceeds were transferred to Carrillo's personal account; and

    c. At least $32,500 of proceeds were transferred to Huettel's personal account.

170. When the SEC staff requested documentation of the $343,000 "loan" from Dr. Carrillo to Carrillo Huettel LLP, counsel for Carrillo Huettel LLP informed it that no loan documentation existed.

171. In addition, counsel for Carrillo Huettel LLP has informed the SEC that the ledgers maintained by Carrillo and Huettel for the Carrillo Huettel Trust Account no longer exist. On information and belief, these trust records were destroyed during the course of the SEC's investigation, notwithstanding that Carrillo, Huettel, and/or the firm were under a duty to maintain the ledgers, both under California law pertaining to attorney trust accounts and also in light of the Commission's investigation.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a)(1)-(3) of the Securities Act
(Against Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue)

172. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

173. By engaging in the acts and conduct described in this Complaint, Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Tradeshow and/or Pacific Blue securities, have:

    a. Employed devices, schemes, and artifices to defraud;

37

    b. Obtained money or property by means of untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    c. Engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities of Tradeshow and/or Pacific Blue.

174. Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue engaged in the above conduct knowingly or recklessly.

175. By reason of the foregoing, Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue, directly or indirectly, singly or in concert, have violated, are violating, and unless restrained and enjoined, will continue to violate Section 17(a)(1)-(3) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
(Against Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer,
John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue)

176. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

177. By engaging in the acts and conduct described in this Complaint, Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Tradeshow and/or Pacific Blue securities, have:

    a. Employed devices, schemes, and artifices to defraud;

   b. Made untrue statements of material fact, or have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c. Engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchasers of securities issued by Tradeshow and/or Pacific Blue.

  178. Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue engaged in the above conduct knowingly or recklessly.

  179. By reason of the foregoing, Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow and Pacific Blue, directly or indirectly, singly or in concert, have violated and unless enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**THIRD CLAIM FOR RELIEF**
**Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
(Against Carrillo Huettel LLP, Carrillo, and Huettel)

  180. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

  181. By engaging in the acts and conduct described in this Complaint, Carrillo Huettel LLP, Carrillo, and Huettel knowingly provided substantial assistance to Pacific Blue's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and thereby are liable under those provisions as aiders and abettors, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

  182. By reason of the foregoing, Carrillo Huettel LLP, Carrillo, and Huettel have violated and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against de Beer)

183. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

184. By engaging in the acts and conduct described in this Complaint, de Beer knowingly provided substantial assistance to John Kirk, Ben Kirk and Boyle's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and thereby is liable under those provisions as an aiders and abettor, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

185. By reason of the foregoing, de Beer has violated and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FIFTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against Gibraltar)

186. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

187. By engaging in the acts and conduct described in this Complaint, Gibraltar knowingly provided substantial assistance to Ben Kirk's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and thereby is liable under those provisions as an aiders and abettor, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

188. By reason of the foregoing, Gibraltar has violated and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SIXTH CLAIM FOR RELIEF
### Control Person Liability for Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against de Beer)

189. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

190. By engaging in the acts and conduct described in this Complaint, Tradeshow and Pacific Blue directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Tradeshow and/or Pacific Blue securities, have:

   a. Employed devices, schemes, and artifices to defraud;

   b. Made untrue statements of material fact, or have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c. Engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchasers of securities issued by Tradeshow and/or Pacific Blue.

191. De Beer was a control person of Tradeshow and a control person of Pacific Blue for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

192. De Beer exercised actual power and control over Tradeshow, including through serving as its president and sole director, managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

193. De Beer exercised actual power and control over Pacific Blue, including through serving as its chairman of the board of directors, managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

194. By reason of the foregoing, as a control person of Tradeshow and of Pacific Blue under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], de Beer is liable for Tradeshow's and Pacific Blue's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### SEVENTH CLAIM FOR RELIEF
### Control Person Liability for Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against John Kirk, Ben Kirk and Boyle)

195. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

196. By engaging in the acts and conduct described in this Complaint, Skymark directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Tradeshow and/or Pacific Blue securities, has:

    a. Employed devices, schemes, and artifices to defraud;

    b. Made untrue statements of material fact, or have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. Engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchasers of securities issued by Tradeshow and/or Pacific Blue.

197. John Kirk, Ben Kirk and Boyle were control persons of Skymark for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

198. John Kirk exercised actual power and control over Skymark, including through serving as its sole director, managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

199. Ben Kirk exercised actual power and control over Skymark, including through managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

200. Boyle exercised actual power and control over Skymark, including through serving as its president, managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

201. By reason of the foregoing, as control persons of Skymark under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], John Kirk, Ben Kirk and Boyle are liable for Skymark's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## EIGHTH CLAIM FOR RELIEF
### Control Person Liability for Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against John Kirk and Hinton)

202. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

203. By engaging in the acts and conduct described in this Complaint, Emerging Stock Report directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Tradeshow and/or Pacific Blue securities, has:

    a. Employed devices, schemes, and artifices to defraud;

43

    b. Made untrue statements of material fact, or have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. Engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchasers of securities issued by Tradeshow and/or Pacific Blue.

204. John Kirk and Hinton were control persons of Emerging Stock Report for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

205. John Kirk exercised actual power and control over Emerging Stock Report, including through his ownership, managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

206. Hinton exercised actual power and control over Emerging Stock Report, including through serving as its director, managing its operations, directing its strategy, and possessing authority to execute documents on its behalf.

207. By reason of the foregoing, as control persons of Emerging Stock Report under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], John Kirk and Hinton are liable for Emerging Stock Report's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### NINTH CLAIM FOR RELIEF
### Violations of Section 17(a)(2) of the Securities Act
(Against Franklin)

208. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

209. By engaging in the acts and conduct described in this Complaint, Franklin directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Pacific Blue securities, has obtained money

or property by means of untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

210. Franklin engaged in the above conduct knowingly or recklessly.

211. By reason of the foregoing, Franklin, directly or indirectly, singly or in concert, have violated, are violating, and unless restrained and enjoined, will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)].

## TENTH CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
(Against Franklin)

212. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

213. By engaging in the acts and conduct described in this Complaint, Franklin directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of Pacific Blue securities, has made untrue statements of material fact, or has omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

214. Franklin engaged in the above conduct knowingly or recklessly.

215. By reason of the foregoing, Franklin, directly or indirectly, singly or in concert, has violated and unless enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## ELEVENTH CLAIM FOR RELIEF
### Sale of Unregistered Securities in Violation of Section 5(a) and (c) of the Securities Act
(Against Gibraltar, Davis, John Kirk, Ben Kirk, Boyle, Hinton, de Beer and Tradeshow)

216. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

217. The shares of Tradeshow that Gibraltar, Davis, John Kirk, Ben Kirk, Boyle, Hinton, and de Beer offered and sold as alleged herein constitute "securities" as defined in the Securities Act and the Exchange Act.

218. Gibraltar, Davis, John Kirk, Ben Kirk, Boyle, Hinton, de Beer, and Tradeshow, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

219. Davis, de Beer and Tradeshow were necessary participants and/or substantial factors in the distribution of Tradeshow shares by Gibraltar, John Kirk, Ben Kirk, Boyle and Hinton.

220. By reason of the foregoing, Defendants have violated and unless restrained and enjoined will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)].

## TWELFTH CLAIM FOR RELIEF
### Sale of Unregistered Securities in Violation of Section 5(a) and (c) of the Securities Act
(Against all Defendants)

221. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

222. The shares of Pacific Blue that Defendants offered and sold as alleged herein constitute "securities" as defined in the Securities Act and the Exchange Act.

223. Defendants, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

224. Carrillo Huettel LLP, Carrillo, Huettel, Davis, de Beer, Franklin and Pacific Blue were necessary participants and/or substantial factors in the distribution of Pacific Blue shares by Gibraltar, John Kirk, Ben Kirk, Boyle, Hinton and Dr. Carrillo.

225. By reason of the foregoing, Defendants have violated and unless restrained and enjoined will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)].

## THIRTEENTH CLAIM FOR RELIEF
(Against Relief Defendant)

226. Paragraphs 1 through 171 are realleged and reincorporated by reference as if fully set forth herein.

227. Relief Defendant Dr. Carrillo obtained proceeds of the fraudulent offerings of securities alleged above under circumstances in which it is not just, equitable, or conscionable for the Relief Defendant to retain these ill-gotten gains. Relief Defendant gave no consideration for his receipt of these ill-gotten gains and has no legitimate claim to these funds. Relief Defendant has therefore been unjustly enriched.

228. By reason of the foregoing, Relief Defendant should disgorge his ill-gotten gains, plus prejudgment interest thereon.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court issue a Final Judgment:

**I.**

Finding that Defendants each violated the securities laws and rules promulgated thereunder as alleged against them herein;

**II.**

Permanently enjoining Defendants and their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of each of the securities laws and rules promulgated thereunder, or alternatively, from aiding and abetting such future violations, as respectively alleged against them herein;

**III.**

Ordering Defendants Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, Davis, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow, Pacific Blue, and Defendant and Relief Defendant Dr. Carrillo, to each submit a verified written accounting, signed by each of them

under penalty of perjury, to determine the amount of ill-gotten gains received directly or indirectly as a result of the misconduct alleged herein;

## IV.

Ordering Defendants Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, Davis, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow, Pacific Blue, and Defendant and Relief Defendant Dr. Carrillo, to repatriate all funds and assets obtained from the fraudulent activities described herein that are now located outside the Court's jurisdiction;

## V.

Ordering Defendants Carrillo Huettel LLP, Carrillo, Huettel, Gibraltar, Davis, de Beer, John Kirk, Ben Kirk, Boyle, Hinton, Tradeshow, Pacific Blue, and Defendant and Relief Defendant Dr. Carrillo, to disgorge, with prejudgment interest thereon, all ill-gotten gains received directly or indirectly as a result of the misconduct alleged herein, jointly and severally;

## VI.

Ordering Defendants Carrillo Huettel LLP, Carrillo, Huettel, and de Beer to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VII.

Enjoining and restraining Defendants Carrillo, Huettel, de Beer, Franklin, John Kirk, Ben Kirk, Boyle, and Hinton, from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)].

## VIII.

Barring Defendants Carrillo, Huettel, de Beer, Franklin, John Kirk, Ben Kirk, Boyle, and Hinton from serving as an officer or director of any public company, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

## IX.

Granting such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         March 15, 2013

Respectfully submitted,

Andrew M. Calamari
Regional Director
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Room 400
New York, New York 10281-1022
Telephone: (212) 336-0080 (Todd Brody)
CalamariA@sec.gov

*Of Counsel:*
Todd D. Brody
Michael D. Paley
Joshua Newville
Katherine Bromberg